UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

MR. HANDYMAN INTERNATIONAL,
LLC, a Michigan limited liability company
    Plaintiff,

vs.

JIM O'NEIL, an Oregon resident,
TRACEY O'NEIL, an Oregon resident,
and NMCBS, LLC, an Oregon limited
liability company
    Defendant.

Case No. _____

Hon. _____

---

UFER & SPANIOLA, P.C.
By:  Gary W. Faria (P37481)
Joel A. Greene (P74789)
**Counsel for Plaintiffs**
5440 Corporate Drive, Suite 250
Troy, Michigan  48098-2648
(248) 641-7000

## COMPLAINT

NOW COMES PLAINTIFF Mr. Handyman International, LLC and, for its Complaint against Defendants Jim O'Neil, Tracey O'Neil, and NMCBS, LLC, states as follows:

### THE PARTIES AND JURISDICTION

1.     Plaintiff Mr. Handyman International, LLC ("MHI") is a Michigan limited liability company and has its principal place of business in Washtenaw County, Michigan.

2.     MHI's members, and their respective citizenships, are (a) a trust whose trustee resides in Michigan; (b) a trust whose trustee resides in Florida; (c) an individual who resides in Michigan; and (d) a Michigan limited partnership whose general partner is a Michigan corporation having its principal place of business in Michigan and whose limited partners are two trusts with their respective trustees residing in Florida.

-2-

3. Defendants Jim and Tracey O'Neil (together referred to as "O'Neil") are individual citizens and residents of the State of Oregon. Pursuant to the Franchise Agreement dated July 16, 2009, attached as *Exhibit 1* to this Complaint (the "Franchise Agreement"), O'Neil, individually or through NMCBS, LLC, previously operated a Mr. Handyman franchised business in Oregon.

4. NMCBS, LLC ("NMCBS;" together with O'Neil referred to as "Defendants") is an Oregon limited liability company and has its principal place of business in Lake Oswego, Oregon. Upon information and belief, NMCBS's only members are Defendants Jim O'Neil and Tracey O'Neil, each of whom is a resident of Oregon.

5. Defendants are jointly and independently responsible for the obligations of the "Franchisee" under the Franchise Agreement.

6. This Court has subject matter jurisdiction over this action under 28 U.S.C. §1332(a) because this action is between citizens of different states and the amount in controversy, exclusive of interest and costs, exceeds the sum of $75,000.00.

7. Defendants are subject to the general personal jurisdiction of this Court under M.C.L. §§600.701(3) and M.C.L. §§600.731(2) because they have consented thereto by virtue of Section 15.G of the Franchise Agreement which provides, in pertinent part:

> [Y]ou agree that all actions arising under this Agreement, or otherwise, as a result of the relationship between you and us shall be commenced in the state, and in the state, or federal court of general jurisdiction, closest to where our principal business address then is located, and you irrevocably submit to the jurisdiction of such courts and waive any objection you may have to either the jurisdiction of or venue in such courts…

8. Alternatively and in addition, Defendants are subject to the limited personal jurisdiction of this Court (a) under M.C.L. §600.705(1) and 600.735(1) because MHI's claims arise out of, among other things, the Defendants' transaction of business in Michigan, and (b)

under M.C.L. §600.705(2) and M.C.L. §600.735(2), because MHI's claims arise out of their having engaged in conduct causing consequences to occur in Michigan resulting in an action for tort.

9. Venue is appropriate in this district (a) under 28 U.S.C. §1391(a) because the Defendant is subject to personal jurisdiction in this district, and (b) under Section 15.G. of the Franchise Agreements which specifically provides that venue shall be proper in the federal court of general jurisdiction closest to where MHI's principal business address is located, that being the United States District Court for the Eastern District of Michigan.

## BACKGROUND AND GENERAL ALLEGATIONS

### MHI As Owner, Franchisor And Licensor of The System, Related Proprietary Marks, and Related Confidential and Proprietary Information and Trade Secrets

10. MHI has developed in part and purchased in part, and owns, a professional home and business repair and general maintenance business system (the "System").

11. In connection with its System, MHI has registered, among others, certain service marks, including MR. HANDYMAN (Reg. No. 2834696); MR. HANDYMAN (Reg. No. 2620745); MRHANDYMAN.COM (Reg. No. 3734956); and ON TIME. DONE RIGHT. (Reg. No. 2822956) (collectively referred to as the "Service Marks" or "Marks").

12. Also, MHI has developed certain confidential and proprietary software, procedures, guidelines and other trade secrets.

13. MHI is in the business of, among other things, licensing the right to use the Marks, its business system, and other proprietary materials in the operation of approved MHI franchised businesses in designated territories throughout the United States and internationally pursuant to franchise agreements.

14. MHI has spent and continues to spend considerable resources and effort on the development, promotion and servicing of the MHI business, including the Marks.

15. In addition to the System, the development of customer lists and related customer information is a result of substantial investments on the part of MHI in promoting the Mr. Handyman name and Marks, including a central marketing staff responsible for aiding franchisees in marketing and for the creation of print advertising for use by Mr. Handyman franchisees in their individual local advertising.

16. As a result of MHI's efforts and the use of the System, the Marks, and MHI's proprietary information and trade secrets in the operation of approved franchised businesses, said System, Marks and information have created substantial goodwill for MHI.

17. Also as a result of MHI's development efforts and efforts to maintain confidentiality, the System and related proprietary materials and trade secrets derive substantial independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from their disclosure or use.

### Defendants' Franchise Agreement And The Franchised Business

18. On or about July 16, 2009, O'Neil and MHI entered into a franchise agreement (the "Franchise Agreement"). A copy of the Franchise Agreement is attached as *Exhibit 1*.

19. On or about September 16, 2009, MHI consented to the assignment of the Franchise Agreement by O'Neil to their controlled limited liability company, NMCBS. See *Exhibit 2*.

20. O'Neil operated the franchised business through NMCBS.

21. Under the Franchise Agreement, Defendants were permitted to use MHI's Marks, the System, and other MHI proprietary materials and trade secrets in the operation of a MHI franchised business in a specified territory in Clackamas, Multnomah, and Washington Counties, Oregon (the "Territory").

22. Defendants thereafter operated the franchised business in the Territory ("the Franchised Business") using MHI's Marks, the System, and other proprietary materials and trade secrets.

### The Franchise Agreement And Its Pertinent Provisions Relating To Paying Royalties And Reporting Gross Sales

23. In exchange for MHI licensing to Defendants the right to use MHI's Marks, the System, and other proprietary materials and trade secrets, Defendants agreed to pay a weekly royalty to MHI.

24. In particular, Section 2.C. of the Franchise Agreement provides:

C. *ROYALTY.*

*You promise to pay us a weekly royalty (the "Royalty"). The royalty structure will be as follows:*

*3.5 % on material revenue generated;*

*7 % on Gross Sales less material revenue generated*

25. Section 2.C. of the Franchise Agreement also requires Defendants, among other things, to submit a correct statement of Gross Sales of the Franchised Business on a weekly basis and in the manner prescribed by MHI and provides that failure to do so subject Defendants to a late royalty fee.

26. Section 2.D. of the Franchise Agreement also provides that MHI may impose weekly late report fees, late payment fees, and interest if Defendants fail to timely report and/or pay royalties when due.

27. Section 13.A. of the Franchise Agreement addressed Defendants' payment of amounts owed to MHI upon the termination or expiration of the Franchise Agreement and provides, in relevant part:

> *You promise to pay to us, on the effective date of termination or expiration of this Agreement, or at any later date that the amounts due to us are determined: (i) all Royalties, Marketing and Promotion Fund contributions, fees, amounts owed for purchases from us, late payments, and interest*

### The Franchise Agreement And Its Pertinent Provisions
### Relating To The Customer List Of The Franchised Business

28. The Franchise Agreement unambiguously provides, among other things, that all customer lists used in the operation of the Franchised Business are the proprietary property of MHI, must be provided to MHI upon termination of the Franchise Agreement, and may not be used for any purpose other than the operation of the Franchised Business.

29. Section 5.B of the Franchise Agreement provides, in pertinent part as follows, concerning the customer list, its proprietary status, and its permitted and non-permitted uses:

> *B.   PROPRIETARY INFORMATION/CUSTOMER LISTS.*
>
> *You acknowledge and agree that we own any and all customer lists and their contents that you may develop during the normal course of operating the Franchised Business... You promise not to use any customer list for any purpose other than in the normal operation of the Franchised Business without our prior written approval...*

30. The Franchise Agreement further provides, in its Section 13.B, in pertinent part as follows, concerning Defendants' post-termination obligations and the prohibitions against their use or disclosure of, the customer list:

> *B.   MARKS.*
>
> *Upon the termination or expiration of this Agreement, you promise to:*
>
> *4.    immediately refrain from engaging in any business relationship or having any contact with customers or former customers of the Franchised Business, or to provide them services, or for any other purpose(s) related to the Franchised Business;*

\*\*\*

> 8. deliver to us, within 7 days, an electronic and hard copy list of the names, telephone numbers, complete mailing addresses, frequency of service, last date of service, and price of such service for all customers serviced by you and the names, addresses, and telephone numbers of the employees rendering such service to each customer;

## The Franchise Agreement And Its Pertinent Provisions Relating To The Telephone Number(s) Of The Franchised Business

31.  In Section 2.G.3., Defendants promised "to acquire and maintain a dedicated Mr. Handyman business telephone line that, in consideration for our granting you a Franchise, you agree to assign to us as a part of this Agreement (Exhibit D)."

32.  Exhibit D to the Franchise Agreement is the Telephone Listing Agreement, and it provides, in part:

> *Upon termination or expiration of the Franchise Agreement (without renewal or extension), FRANCHISOR will have the right and is hereby empowered to effectuate the assignment of the Telephone Numbers and Listings, and, in such event, FRANCHISE OWNER will have no further right, title, or interest in the Telephone Numbers and Listings and will remain liable to the Telephone Company for all past due fees owing to the Telephone Company on or before the effective date of the assignment hereunder.*
>
> *FRANCHISE OWNER agrees and acknowledges that as between FRANCHISOR and FRANCHISE OWNER, upon termination or expiration of the Franchise Agreement, FRANCHISOR will have the sole right to and interest in the Telephone Numbers and Listings, and FRANCHISE OWNER appoints FRANCHISOR as FRANCHISE OWNER'S true and lawful attorney-in-fact to direct the Telephone Company to assign same to FRANCHISOR, and execute such documents and take such actions as may be necessary to effectuate the assignment. Upon such event, FRANCHISE OWNER will immediately notify the Telephone Company to assign the Telephone Numbers and Listings to FRANCHISOR. If FRANCHISE OWNER fails to promptly direct the Telephone Company to assign the Telephone Numbers and Listings to FRANCHISOR, FRANCHISOR will direct the Telephone Company to effectuate the assignment, contemplated hereunder, to FRANCHISOR.*

33.  In addition, Section 13.B. of the Franchise Agreement addresses Defendants' post-termination obligations with respect to the telephone number and provides:

> *Upon the termination or expiration of this Agreement, you promise to:*
>
> 10. *notify the telephone company and all telephone directory publishers of the termination or expiration of your right to use any telephone, telecopy, or other*

*numbers and any telephone directory listings associated with any Mark, and authorize the transfer of these numbers and directory listings to us or, at our direction, instruct the telephone company to forward all calls made to your telephone number to numbers we specify. If you fail to do so, we can take whatever action is necessary, on your behalf and consistent with the Telephone Listing Agreement attached to this Agreement as Exhibit D, to effect these events;*

11. *agree to cooperate with us to the extent necessary to effectuate any changes in telephone numbers or other transfers of our property to us, including the signing of any forms, authorizations or other necessary documents;*

### The Franchise Agreement And Its Pertinent Non-Competition Provisions

34. In exchange for MHI licensing to Defendants the right to use MHI's Marks, the System, and other proprietary materials and trade secrets, Defendants also agreed to, among other things, not compete with MHI for a period of eighteen (18) months after the termination or expiration of the Franchise Agreement.

35. In particular, Section 13.D. of the Franchise Agreement provides:

D. *COVENANT NOT TO COMPETE*

*For a period of 18 months from the time of expiration or termination of this Agreement, you promise to not engage as an owner, shareholder, partner, director, officer, employee, consultant, salesperson, representative, or agent or in any other capacity in any residential or business maintenance or repair business, within:*

1. *the Territory as defined in Exhibit A of this Agreement;*

2. *the geographic area encompassed by the Territories of any Mr. Handyman Franchise Owners as of the Date of the termination or expiration of this Agreement;*

3. *a geographic area that is contained in a circle having a radius of 25 miles from the outside boundary of the Territory as defined in Exhibit A of this Agreement.*

36. In Section 17 of the Franchise Agreement, Defendants affirmed that:

*"[t]he covenants not to compete set forth in this Agreement are fair and reasonable, and will not impose any undue hardship on you, since you have other considerable skills, experience, and education which will afford you the opportunity to derive income from other endeavors.*

## Termination Of The Franchise Agreement

37.     Section 12.A of the Franchise Agreement provides that Defendants can terminate the Franchise Agreement by giving MHI prior written notice of termination and executing a general release.

38.     In June 2011, MHI sent Defendants a default notice for abandonment of the Franchised Business and subsequently became aware that, without providing prior notice to MHI, Defendants had closed the Franchised Business.

39.     In a letter dated June 27, 2011, MHI treated Defendants' cessation of business as their request to terminate the Franchise Agreement and accepted their termination of the Franchise Agreement effective June 27, 2011 (the "Termination Letter").  A copy of the Termination Letter is attached as *Exhibit 3*.

40.     In the Termination Letter, MHI reminded Defendants of their post-termination obligations including, among other things, the foregoing non-competition obligations.

## Defendants' Breaches Of The Franchise Agreement

41.     Notwithstanding their contractual promises, Defendants improperly terminated the Franchise Agreement, failed to pay all amounts owed to MHI, failed to transfer the telephone numbers of the Franchised Business to MHI, and opened, and presently operate, a competing handyman business, The Oregon Handyman.

42.     According to its website, www.handyman-oregon.com, O'Neil represents that he is the "owner of The Oregon Handyman," and that this business "provides a wide range of repair, maintenance, and improvement services; for both residential and commercial locations" in all of Portland, Oregon.  The website also includes a photo of O'Neil.  See *Exhibit 4*.

43. Defendants are acting as owners and/or in other capacities for a residential or business maintenance or repair business as contemplated by and in violation of Section 13.D.

44. Such residential or business maintenance or repair business is providing services within one or more of the geographic areas as contemplated by and in violation of Section 13.D.

45. Additionally, upon information and belief, Defendants disclosed MHI's customer list to their competing business and are using the same in and for the benefit of the competing business in violation of their obligations to only use MHI's customer list in the operation of the Franchised Business and to preserve the confidentiality of the customer list during and after the term of the Franchise Agreement.

46. Upon information and belief, the Defendants did, individually or in concert with one another, misappropriate MHI's confidential information and customer list and disclose to and/or use such in and for the benefit of a new competing business in violation of the Franchise Agreement and in violation of MCL § 445.1901 *et seq*.

## COUNT I
## BREACH OF CONTRACT FOR VIOLATION OF
## NON-COMPETITION OBLIGATIONS

47. Plaintiff realleges and incorporates herein by reference the allegations contained in Paragraphs 1 through 46 of this Complaint, as set forth above.

48. The Franchise Agreement constitutes a valid and enforceable contract between MHI and Defendants.

49. Defendants were contractually obligated to, among other things; abide by the terms of the non-competition provisions of the Franchise Agreement.

50. Defendants have breached this obligation by acting as an owner and/or in other capacities with respect to a business, namely The Oregon Handyman, providing competing services with the area(s) prohibited by the Franchise Agreement.

51. Said breach has caused, and if not enjoined may continue to cause, monetary damage to MHI in the form of lost business, lost profits, loss of customers and goodwill, damage to business reputation, the unjust enrichment of Defendants, and MHI's inability to market Defendants' former franchise territory to a new franchisee.

52. In addition, if allowed to continue, said breach creates the immediate risk of irreparable harm to MHI which cannot be fully or adequately remedied by an award of money damages. The full extent of MHI's lost business, lost profits, lost customers, lost goodwill, and damage to MHI's business reputation is difficult to measure, and by its nature cannot be fully and adequately remedied by an award of money damages.

53. Under the circumstances, an injunction enjoining Defendants' continued breach of their non-competition obligations is therefore appropriate in order to prevent and avoid irreparable harm to MHI. The allegations in this Complaint show that MHI is likely to succeed on the merits of its claims, that the harm to Defendants from the requested injunction does not outweigh the harm to MHI if an injunction is not granted; and that the requested injunction is in the public interest.

54. The present action is the type of action or proceeding within the contemplation of Section 15.C. of the Franchise Agreement. Therefore, to the extent MHI is the prevailing party in this action, it is entitled to reimbursement from Defendants for all costs and expenses incurred in connection with this action, including but not limited to reasonable attorneys' and experts' fees, plus interest thereon.

WHEREFORE, MHI respectfully requests the following relief:

A. Temporary Restraining Order and/or Preliminary Injunction prohibiting Defendants from engaging as an owner, shareholder, partner, director, officer,

       employee, consultant, salesperson, representative, or agent or in any other capacity in any residential or business maintenance or repair business within the area(s) set forth in Section 13.D. of the Franchise Agreement for (i) eighteen (18) months from the termination of the Franchise Agreement, plus (ii) an additional period of time equal to that which Defendants have been in violation of Section 13.D;

B.    Permanent Injunction prohibiting Defendants from engaging as an owner, shareholder, partner, director, officer, employee, consultant, salesperson, representative, or agent or in any other capacity in any residential or business maintenance or repair business within the area(s) set forth in Section 13.D. of the Franchise Agreement for (i) eighteen (18) months from the termination of the Franchise Agreement, plus (ii) an additional period of time equal to that which Defendants have been in violation of Section 13.D;

C.    An award of money damages compensating MHI for any monetary loss deemed by the Court to be appropriately compensated by such an award;

D.    An award of MHI's costs and expenses, including attorney fees, incurred in connection with this action as contemplated by Section 15.C. of the Franchise Agreement;

E.    Pre-judgment interest (as an element of damages and/or otherwise) and post-judgment interest as appropriate and as provided by law; and

F.    Any other relief the Court deems appropriate.

## COUNT II
## BREACH OF CONTRACT AND MISAPPROPRIATION OF CUSTOMER LIST

55.    Plaintiff realleges and incorporates herein by reference the allegations contained

in Paragraphs 1 through 54 of this Complaint, as set forth above.

56. The Franchise Agreement constitutes a valid and enforceable contract between MHI and Defendants.

57. Defendants were contractually obligated to, among other things, preserve the confidentiality of MHI's customer list and not use the customer list for any purpose other than operating a MHI franchise business.

58. Defendants have breached this contractual obligation by taking, disclosing, and/or using MHI's customer list in and for the benefit of a competing business.

59. The list of customers and related customer information such as address, telephone number, frequency of service and price for the Territory was developed during operation of the Franchised Business using the System.

60. The customer list and information comprise MHI's trade secrets because they were the subject of efforts that were reasonable under the circumstances to preserve their secrecy, and because they derive substantial independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from their disclosure, within the contemplation of the Michigan Uniform Trade Secrets Act ("MUTSA"), M.C.L. §445.1902(d).

61. The franchisor/franchisee relationship context in which Defendants acquired the customer list and information comprise circumstances giving rise to a duty on the part of the Defendants to maintain their secrecy or limit their use, as contemplated by MUTSA, M.C.L. §445.1902(b)(ii)(B).

62. In addition, and/or in the alternative, the franchisor/franchisee relationship in which Defendants acquired the customer list and information is one which, by operation of law,

implied and created fiduciary and/or other duties on the part of Defendants to protect the confidentiality and trade secret status of said trade secrets and not to misappropriate them.

63. Defendants have breached their duties to maintain the confidentiality of MHI's trade secrets by taking, disclosing, and using them in and for the benefit of a competing business.

64. Said taking, disclosing, and use of the customer list and customer information by the Defendants as alleged above has been without MHI's consent, and accordingly comprises misappropriation of MHI's trade secrets within the contemplation of M.C.L. §445.1902(b)(ii).

65. Upon information and belief, said misappropriation has been willful and malicious within the contemplation of M.C.L. §445.1905.

66. Said misappropriation has resulted and will continue to result in the future in monetary damage to MHI as contemplated by M.C.L. §445.1904 in the form of loss of customers; loss of business; loss of goodwill; diminution in the value of its System, name, marks and trade secrets; and diminution in the value of MHI franchises generally, and particularly a MHI franchise for the Territory.

67. The present action is the type of action or proceeding within the contemplation of Section 15.C. of the Franchise Agreement. Therefore, to the extent MHI is the prevailing party in this action, it is entitled to reimbursement from Defendants for all costs and expenses incurred in connection with this action, including but not limited to reasonable attorneys' and experts' fees, plus interest thereon.

WHEREFORE, MHI respectfully requests the following relief:

A. An award of money damages compensating MHI for any past and future monetary loss and/or unjust enrichment deemed by the Court to be appropriately compensated by such an award;

B. An award of MHI's costs and expenses, including attorney fees, incurred in connection with this action as contemplated by Section 15.C. of the Franchise Agreement and M.C.L. §445.1905;

C. Pre-judgment interest (as an element of damages and/or otherwise) and post-judgment interest as appropriate and as provided by law; and

D. Any other relief the Court deems appropriate.

## COUNT III
## BREACH OF CONTRACT FOR TERMINATION OF FRANCHISED BUSINESS BY DAVIS AND BARKLEY DAVIS

68. Plaintiff realleges and incorporates herein by reference the allegations contained in Paragraphs 1 through 67 of this Complaint, as set forth above.

69. The Franchise Agreement constitutes a valid and enforceable contract between MHI and Defendants.

70. Defendants were contractually obligated to, among other things provide MHI prior written notice before terminating their Franchise Agreement.

71. Defendants breached this obligation by improperly terminating the Franchise Agreement.

72. Said breach has caused monetary damage to MHI in the form of lost future royalties and/or other fees MHI was entitled to collect and would have collected during the term of the Franchise Agreement.

WHEREFORE, MHI respectfully requests the following relief:

A. An award of money damages in an amount compensating MHI for lost royalties and/or other fees it would have otherwise been entitled to collect during the term of the Franchise Agreement;

B. An award of MHI's costs and expenses, including attorney fees, incurred in connection with this action as contemplated by Section 15.C. of the Franchise Agreement;

C. Pre-judgment interest (as an element of damages and/or otherwise) and post-judgment interest as appropriate and as provided by law; and

D. Any other relief the Court deems appropriate.

## COUNT IV
## BREACH OF CONTRACT FOR FAILURE TO REPORT AND PAY ROYALTIES

73. Plaintiff realleges and incorporates herein by reference the allegations contained in Paragraphs 1 through 72 of this Complaint, as set forth above.

74. The Franchise Agreement constitutes a valid and enforceable contract between MHI and Defendants.

75. Defendants were required to timely submit correct statements of Gross Sales and pay royalties thereon.

76. Defendants only reported gross sales through week 15 of this calendar year then subsequently reported gross sales in the amount of zero dollars ($0) or did not report gross sales at all through their termination of the Franchise Agreement.

77. Defendants breached their obligation by underreporting the amount of gross sales generated by the Franchised Business and, as a result, underpaid the amount of royalties owed to MHI.

78. Said breach has caused monetary damage to MHI in the form of unpaid royalties, late report fees, late payment fees, and interest owed to MHI.

WHEREFORE, MHI respectfully requests the following relief:

A. An award of money damages in an amount in the amount of past royalties, late report fees, late payment fees, and interest thereon compensating MHI for royalties and/or other fees owed to MHI prior to termination of the Franchise Agreement;

B. An award of MHI's costs and expenses, including attorney fees, incurred in connection with this action as contemplated by Section 15.C. of the Franchise Agreement;

C. Pre-judgment interest (as an element of damages and/or otherwise) and post-judgment interest as appropriate and as provided by law; and

D. Any other relief the Court deems appropriate.

## COUNT V
## BREACH OF CONTRACT FOR FAILURE TO TRANSFER TELEPHONE NUMBER(S)

79. Plaintiff realleges and incorporates herein by reference the allegations contained in Paragraphs 1 through 78 of this Complaint, as set forth above.

80. The Franchise Agreement constitutes a valid and enforceable contract between MHI and Defendants.

81. Defendants were required, upon termination of the Franchise Agreement, to transfer to MHI the telephone numbers used by Defendants in connection with the operation of the Franchised Business.

82. Defendants have breached this obligation by failing to effectuate such assignment of the telephone numbers to MHI.

83. Said breach has caused, and if not enjoined may continue to cause, monetary damage to MHI in the form of lost business, lost profits, loss of customers and goodwill, damage

to business reputation, the unjust enrichment of Defendants, and MHI's inability to market Defendants' former franchise territory to a new franchisee.

84. In addition, if allowed to continue, said breach creates the immediate risk of irreparable harm to MHI which cannot be fully or adequately remedied by an award of money damages. The full extent of MHI's lost business, lost profits, lost customers, lost goodwill, and damage to MHI's business reputation is difficult to measure, and by its nature cannot be fully and adequately remedied by an award of money damages.

85. Under the circumstances, an injunction requiring Defendants to transfer to MHI the telephone numbers used in connection with the Franchised Business, thereby complying with their contractual obligations, is appropriate in order to prevent and avoid irreparable harm to MHI. The allegations in this Complaint show that MHI is likely to succeed on the merits of its claims, that the harm to Defendants from the requested injunction does not outweigh the harm to MHI if an injunction is not granted; and that the requested injunction is in the public interest.

86. The present action is the type of action or proceeding within the contemplation of Section 15.C. of the Franchise Agreement. Therefore, to the extent MHI is the prevailing party in this action, it is entitled to reimbursement from Defendants for all costs and expenses incurred in connection with this action, including but not limited to reasonable attorneys' and experts' fees, plus interest thereon.

WHEREFORE, MHI respectfully requests the following relief:

A. Temporary Restraining Order and/or Preliminary Injunction requiring the Defendants to transfer all telephone numbers used in connection with their Franchised Business, including (503) 802-0002 and (503) 830-9546, to MHI;

B. Permanent Injunction requiring the Defendants to transfer all telephone numbers used in connection with their Franchised Business, including (503) 802-0002 and (503) 830-9546, to MHI;

C. An award of money damages compensating MHI for any monetary loss deemed by the Court to be appropriately compensated by such an award;

D. An award of MHI's costs and expenses, including attorney fees, incurred in connection with this action as contemplated by Section 15.C. of the Franchise Agreement;

E. Pre-judgment interest (as an element of damages and/or otherwise) and post-judgment interest as appropriate and as provided by law; and

F. Any other relief the Court deems appropriate.

UFER & SPANIOLA, P.C.

*s/Gary W. Faria*
Gary W. Faria (P37481)
Attorneys for Plaintiff
5440 Corporate Drive, Suite 250
Troy, MI  48098-2648
(248) 641-7000
gwf@uferspan.com

Dated:  November 28, 2011

187196